IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>KOBE AMERSON,<br><br>　　　　　　Defendant. | 4:21-CR-3068<br><br>TENTATIVE FINDINGS |

The Court has received the revised presentence investigation report in this case. The defendant has objected to the presentence report and moved for both departures and variance from the guidelines sentencing range. Filing 55.

IT IS ORDERED:

1. The Court will consult and follow the Federal Sentencing Guidelines to the extent permitted and required by *United States v. Booker*, 543 U.S. 220 (2005) and subsequent cases. In this regard, the Court gives notice that, unless otherwise ordered, it will:

    (a) give the advisory Guidelines respectful consideration within the context of each individual case and will filter the Guidelines' advice through the 18 U.S.C. § 3553(a) factors, but will not afford the Guidelines any particular or "substantial" weight;

    (b) resolve all factual disputes relevant to sentencing by the greater weight of the evidence and without the aid of a jury;

    (c) impose upon the United States the burden of proof on all Guidelines enhancements;

- (d) impose upon the defendant the burden of proof on all Guidelines mitigators;

- (e) depart from the advisory Guidelines, if appropriate, using pre-*Booker* departure theory; and

- (f) in cases where a departure using pre-*Booker* departure theory is not warranted, deviate or vary from the Guidelines when there is a principled reason justifying a sentence different than that called for by application of the advisory Guidelines, again without affording the Guidelines any particular or "substantial" weight.

2. The defendant has objected to the presentence report in several respects. Filing 55. The defendant has also moved for downward departures and variance from the guidelines range. Filing 55.

- (a) First, the defendant objects to a 2-level enhancement to the offense level, pursuant to U.S.S.G. § 2K2.1(b)(1)(A), for an offense that involved three or more firearms. The defendant, admittedly an unlawful drug user, was photographed holding 2 firearms on August 14, 2020 and had another firearm in his possession when arrested on June 4, 2021. He argues, however, that the photograph was taken outside the timeframe specified by the indictment—"Between on or about September 30, 2020, and on or about June 4, 2021," filing 19 at 1—and that there's no evidence he was using marijuana when he possessed the guns in the photos. Filing 55 at 6. Furthermore, he argues that "the most he ever possessed at one time were 2 [firearms]" and "[a]dding these guns together is inconsistent with the intent of the enhancement that is considering possessing multiple guns at one time." Filing 55 at 6.

- 2 -

The problem with the defendant's argument is that the enhancement is literally based on the allegations *to which the defendant pled guilty*. The indictment charged that

> Between on or about September 30, 2020, and on or about June 4, 2021, in the District of Nebraska and elsewhere, the defendant, KOBE AMERSON, knowing that he was an unlawful user of a controlled substance as defined in 21 U.S.C. § 802, that is, tetrahydrocannabinol, commonly known as marijuana, did knowingly possess firearms and ammunition, that is a Polymer80 brand handgun loaded with Blazer brand ammunition and a Rock Slide USA slide, and a pink in color Ruger LCP handgun and a blue in color SCCY handgun. . . .

Filing 19 at 1. The defendant pled guilty to that charge, and admitted that conduct under oath at the change of plea hearing. *See* filing 45 at 2-3; filing 49 at 16. There is simply no way to reconcile his objection with his plea, and he's not asking to withdraw his plea. Accordingly, based on the defendant's guilty plea and admissions to the offense conduct, the Court's tentative finding is that this objection is without merit. *See United States v. Roberts*, 557 F. App'x 625, 627 (8th Cir. 2014); *United States v. Datcu*, 627 F.3d 1074, 1079 (8th Cir. 2010); *United States v. Antillon-Castillo*, 319 F.3d 1058, 1059 (8th Cir. 2003); *United States v. Mora-Higuera*, 269 F.3d 905, 913 (8th Cir. 2001).

(b) Next, the defendant objects to a 2-level enhancement pursuant to § 2K2.1(b)(4) for possession of a stolen firearm. Filing 55 at 6.

Similarly, he argues that "[t]he handgun that was reported stolen was in the photos taken before and sent on August 14, 2020." Filing 55 at 6. But again, the handgun that was reported stolen was also one that the defendant specifically pled guilty to possessing, and repeatedly acknowledged possession of in support of his plea. *See* filing 19 at 1; filing 45 at 2; filing 55 at 16. Accordingly, the Court tentatively concludes that this objection also lacks merit.

(c) The defendant also objects to the assessment of a 4-level enhancement pursuant to § 2K2.1(b)(6)(B), which provides for an enhancement if the defendant

> used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense. . . .

The presentence report applied the enhancement based on the defendant's arrest with one of the weapons and 529.3 grams of marijuana. The defendant contends that there is no evidence that connects him to drug trafficking. Filing 55 at 7. And because that conduct *isn't* established by the defendant's plea, it's the government's burden to present evidence at sentencing to prove the existence of the disputed facts. *See United States v. Poor Bear, 359 F.3d 1038, 1041 (8th Cir. 2004)*. Accordingly, the Court will resolve this objection at sentencing.

- 4 -

(d) The defendant's final objection is to the criminal history calculation: He was assessed 2 points based on a placement at the Nebraska state Youth Rehabilitation and Treatment Center (YRTC) for more than 60 days, but the defendant argues that this wasn't "a 'sentence of confinement' because the evidence is lacking to find that he was physically confined and not free to leave." Filing 55 at 7.

The Court is not persuaded that evidence on this point is required: a Nebraska YRTC is a juvenile detention facility, and commitment to one is plainly "imprisonment" as the Eighth Circuit has interpreted it. *See United States v. Allen*, 64 F.3d 411, 412-13 (8th Cir. 1995); *accord United States v. Stewart*, 643 F.3d 259, 263-64 (8th Cir. 2011); *see also* Neb. Rev. Stat. §§ 43-286, 43-410, 43-412, 43-424, and 83-102. Had the defendant been sentenced to a Nebraska state penitentiary, it seems unlikely that the Court would need witness testimony describing the facility to conclude that it was a prison. Similarly, the Court finds that the nature of the YRTC as a juvenile detention facility is not subject to reasonable dispute, as it is generally known within this Court's jurisdiction. *See* Fed. R. Evid. 201(b)(1). Accordingly, the Court tentatively finds that this final objection is without merit.

(e) The defendant's first argument for a downward departure is based on U.S.S.G. § 5H1.6, which provides that "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted" but a departure based on loss of caretaking or financial support may be relevant if

>> (i) The defendant's service of a sentence within the applicable guideline range will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family.
>
>> (ii) The loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant. For example, the fact that the defendant's family might incur some degree of financial hardship or suffer to some extent from the absence of a parent through incarceration is not in itself sufficient as a basis for departure because such hardship or suffering is of a sort ordinarily incident to incarceration.
>
>> (iii) The loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available, making the defendant's caretaking or financial support irreplaceable to the defendant's family.
>
>> (iv) The departure effectively will address the loss of caretaking or financial support.
>
> *Id.*, cmt. n. 1(B). The defendant bears the burden of proving the appropriateness of a downward departure. *United States v. Cantu*, 12 F.3d 1506, 1511 (9th Cir. 1993). Accordingly, the Court will resolve this issue at sentencing.

(f) Similarly, the defendant argues for departure based on U.S.S.G. § 5H1.1, which provides that "Age (including youth) may be relevant

- 6 -

in determining whether a departure is warranted, if considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." The Court will also resolve this issue at sentencing.

(g) As his final basis for departure, the defendant argues that his criminal history is overstated within the meaning of U.S.S.G. § 4A1.3(b)(1). Filing 55 at 9. That's a basis for downward departure "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." *Id*. "A downward departure from the defendant's criminal history category may be warranted if, for example, the defendant had two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period." *Id*., cmt. n.3.

The defendant notes that his criminal history "is all related to juvenile offenses" and his only adult offenses are driving offenses. Filing 55 at 9. True enough, but the defendant is only 19 years old, so it's not as if his juvenile offenses are particularly remote in time. Nor does a criminal history category II seem particularly overstated when the juvenile offenses at issue arose out of an armed robbery. But the Court will resolve this issue at sentencing.

(h) Finally, the defendant moves for a downward variance based on his personal circumstances and the circumstances of the offense. *See* filing 55. The Court will resolve that motion at sentencing.

3. Except to the extent, if any, that the Court has sustained an objection, granted a motion, or reserved an issue for later resolution in the preceding section, the parties are notified that the Court's tentative findings are that the presentence report is correct in all respects.

4. If any party wishes to challenge these tentative findings, that party shall, as soon as possible (but in any event no later than three (3) business days before sentencing) file with the Court and serve upon opposing counsel an objection challenging these tentative findings, supported by a brief as to the law and such evidentiary materials as are required, giving due regard to the local rules of practice governing the submission of evidentiary materials. If an evidentiary hearing is requested, such filings should include a statement describing why a hearing is necessary and how long such a hearing would take.

5. Absent timely submission of the information required by the preceding paragraph, the Court's tentative findings may become final and the presentence report may be relied upon by the Court without more.

6. Unless otherwise ordered, any objection challenging these tentative findings shall be resolved at sentencing.

Dated this 6th day of September, 2022.

BY THE COURT:

*John M. Gerrard*
John M. Gerrard
United States District Judge